## BECTON, DICKINSON & CO. et al. v. PAYNE.

District Court, D. New Jersey.
Jan. 6, 1939.

Hans V. Briesen, of New York City, for plaintiffs.

John L. Ridley, of Jersey City, N. J., and Edward J. Leon, Donald Brown, and Harold Weill, all of New York City, for defendant.

CLARK, District Judge.

This patent suit does not follow the usual pattern. The issue here is one of human rather than mechanical relations; this because in that last aspect there is no complication. The two patents (Dickinson, No. 1,742,497, Exhibit P. 1, Dickinson, No. 1,793,068, Exhibit P. 2) in litigation involve a device all too familiar to an ailing race. As it is all too familiar, it is and by the same token correspondingly important. The particular improvement patented is a concededly novel arrangement for locking the needle to the metal tip of the glass barrel of the standard medical syringe.

The importance of a proper interlock need hardly be stressed. It was agreed and would have been plain even without the interesting testimony of Dr. Beling, the medical expert. The field is that of human health and human life. The previous attempts at locking had required either some form of screw thread, some form of bayonet lock or some manual manipulation of the physician (cf. prior art patents, British Roussy No. 25,733, Witkowski No. 762,603, Payne No. 1,150,879, Smith No. 1,384,355, Platt No. 1,520,508, Carter No. 1,556,418 and also the suggestion of Dr. Labat). All leaked (water and air) and all were difficult of adjustment. While the doctor was forced to fiddle, the patient suffered or died.

The plaintiff, Dickinson, avoided these difficulties quite simply but quite effectively. He provided the syringe barrel with a cylindrical tapered tip surrounded by two circular rings supported on posts. From the top to the bottom ring run thin metal spirals or helices. The needle hub has a recess corresponding to the hub and just above the recess a platform, two sides of which are flush with the nub or flatter and two sides of which form circular projecting curves. When the hub is fitted over the tip and pushed directly down it the flat sides slip down the spirals. When that hub is turned, however, the projecting curves catch under the metal spirals and so lock. Or if you prefer patent office jargon: "The syringe barrel must, however, be provided with a sleeve having interior guiding and camming grooves while the needle hub must be provided with oppositely situated projections extending in the same plane and developed as fins capable of entering the guiding grooves of the sleeve and of descending down those grooves, until the hub is fully seated on the tip, whereupon, by a slightly continued rotary movement, the fins will enter into camming and locking engagement with that side of the groove of the sleeve which is opposite to the side which guided the hub in its descent". Plaintiffs' brief, p. 6

Plaintiffs' brief correctly quotes us, a judicial officer, as we recently observed, not notably biased in favor of validity, as saying at the trial: "I would unhesitatingly and right now say that you have shown that touch of genius, if it wasn't for this apparent use beforehand". Record, p. 255

The opportunity for more deliberate consideration has not changed our opinion. For once, at least, a mechanical expert seemed convincing and his explanation of the certain knowledge of locking possible with a helix and impossible with a screw thread, intelligible. Defendant himself subscribes, as we understand it, to this view and bases his defenses on the if of the above quotation from us. It is that position of his which makes the issue of human relation referred to in our opening sentence.

We find it rather a distressing relation to have to adjudicate upon. The entire defense seems to have been inspired by a former business associate of the plaintiff patentee. By his own testimony one Randall has fallen upon evil days (economically) and to be now engaged in giving technical advice to rival manufacturers (the defendant) and distributors (Popper and Klein) of the company of which the plaintiff is President. When we say inspired, we do not use the word invidiously. Mr.

Randall, however, very candidly admitted his connection with the present defendant and with the persons connected with the principally relied upon prior use.

An even casual reading of testimony adduced in support of that prior use illustrates the rationale of the cautions imposed by the courts on proof of that issue. It is hardly necessary to cite cases for those cautions. They are collected in the West Digest System under Patents, ☞ 62 and 63. We have often thought that more insistence on proof in writing and beyond a reasonable doubt might improve the administration of other branches of the civil law.

█ It is perhaps not profitable to speculate as to reasons behind the, to us, incredible character of the principal witness, Mr. Son's testimony. He is admittedly partisan, being a former employee of Mr. Randall and a recent alleged infringer (for Popper and Klein). That bias, as often does, may either have jaundiced his recollection or it may have jolted his ethics. At any rate, he produced a card of needles (Exhibit D. 7), some of which dated from his employment with the Framingham Surgical Instrument Company (a small and now defunct machine tool plant) while he was in charge of the hypodermic needle and syringe department and others from his employment with the MacGregor Instrument Company of Needham. These needles appear to have the same flanges, fins, or flat forms at the base of their hubs as the needles in suit. They were not made, however, for any purpose of fitting a helical locking device but for convenient insertion in the slits of a selling card. Under the well established principle of accidental use, this last fact disqualifies them as anticipations. Reward is only consistent with consciousness of merit (cf. cases collected in West Digest System under Patents, ☞ 52.

█ It is unnecessary to give much consideration to the account of the MacGregor manufacture. The records of that company are plenary to the effect that no needles similar to the needles of the patent were made until 1925. Moreover, the witness Son's greatest insistence is upon the alleged manufacture of Framingham. He relies in addition to his own testimony upon that of a salesman, one Sellar, and his own foreman, one Reed. The recollection of the first did not become clear until he was shown the actual exhibit D. 7. Fur-

thermore, he manifested personal enmity toward the plaintiff. The second corroborative witness, Reed, seems to have undergone a certain amount of pulling and hauling before he came to the witness stand. He was first approached by Mr. Randall of whom we have spoken of earlier in this opinion and then by Mr. Klein one of plaintiffs' counsel. After and not before these interviews he found in his barn some needles introduced in evidence as Exhibit D. 14. The only needle of that exhibit which seemed to fit the Luerlok was described by the witness, MacGregor, as having the appearance of a manufacturing accident rather than of any inventive design.

The testimony of Son and his two supporting witnesses is vigorously denied by two other persons who had worked at the Framingham Company with Reed and Sellar. They are one Collins, now foreman of the machine shop of the Dennison Manufacturing Company and concededly disinterested, and one Randolph, an employee of the MacGregor Instrument Company since 1921. These gentlemen both kept specimens of the needles manufactured by the Framingham Company in 1920 (all those interested in the needle art seemed to be somewhat like stamp collectors). These specimens are in evidence as Exhibits P. 18 and P. 20 and do not have the flattened side characteristic of the flange necessary to fit in the Luerlok. In addition to this oral testimony we have the fact that no evidence of any sales of the prior use needles of Exhibit D. 7 is offered and the further significant fact that the needles themselves show tapering points, a development of the art admittedly subsequent to the 1920 of their supposed manufacture. We are of the opinion that Son's recollection, if it is recollection, is entirely inaccurate.

We feel that the less said about the Palinsky (partner of Payne) the better and we have the same distaste for the testimony expressed by Judge Hough in the case of Becton Dickinson and Company v. Barnett Palinsky,[1] doing business as Standard Surgical Instrument Company, decided June 22, 1922. The testimony of the man who built the straddle-milling machine and the failure of Payne to produce bills for his alleged brass purchases and to show the flattened flange in the application for the design patent in 1931 seem quite conclusive even without his curious story about the blue print letter of 1922—a letter he was

---

[1] No opinion for publication.

neither able to produce nor to substantiate in any way.

An injunction will issue.